**In the Matter of C.J. III, Appellant.**

**No. 85–588.**

District of Columbia Court of Appeals.

Argued July 9, 1986.
Decided Sept. 2, 1986.

---

Phyllis Tatik Bookspan, appointed by the court, with whom Jeffrey A. Dunn and Cheri L. Cannon, Washington, D.C., were on brief, for appellant.

Karen S. Dworkin, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and FERREN and BELSON, Associate Judges.

PER CURIAM:

Appellant, a juvenile, was adjudicated a delinquent after a bench trial on a charge of robbery in violation of D.C. Code § 22–2901 (1981). On appeal, appellant claims that the trial court's verdict was "plainly wrong" because it was based on incorrect factual findings and on insufficient evidence. In addition, appellant asserts that the trial court abused its discretion in refusing to reopen cross-examination of two government witnesses on the subject of bias, and in failing to impose appropriate sanctions for the government's alleged Brady [1] and Jencks Act [2] violations. Finally, appellant asserts that the trial judge exceeded her statutory authority in ordering him restrictively committed to Oak Hill Children's Center. We agree that the trial court's verdict was based on incorrect factual findings and are unable to conclude that this error was harmless. Accordingly, we reverse.[3]

I

In this case, complainant, Marcus Saunders, testified that on the afternoon of August 5, 1984, he was riding his bicycle in the vicinity of Quebec and Princeton Streets in the District of Columbia. Marcus was initially riding his bicycle with only one boy, but they were later joined by a group of five or six older boys. Of the five or six older boys, all but one were on bicycles.

After some time, Marcus and two of the older boys began to race around the alley. After two trips around the alley, the boy without a bicycle pushed Marcus off his bicycle. Marcus testified that after he fell off his bicycle, a second boy took the bicycle. This second boy who took Marcus' bicycle then gave his own bicycle to the boy who had been standing and both rode away. Marcus testified that he did not know the older boys, and did not get a good look at the boys who took his bicycle. While Marcus later told the police that the boys who had taken his bicycle were be-

1. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. 18 U.S.C. § 3500 (1982).

3. Because of our disposition of appellant's claim regarding incorrect factual findings, we do not consider the claims made concerning bias cross-examination, alleged Brady and Jencks Act violations, or the restrictive commitment to Oak Hill Children's Center. We do, however, briefly consider appellant's claim that insufficient evidence supported the trial judge's finding of guilt.

tween 11 and 15 years old, at no time did he claim to be able to identify the person who took his bicycle. Thus, Marcus was not asked to make, and did not volunteer, an in-court identification of appellant.[4] Further, Marcus did not testify that he saw appellant later in the day in possession of the stolen bicycle.

Lonnie Brown, a 14 year old boy, who was present when Marcus' bike was taken, also testified at trial. Lonnie testified that on August 5, 1984, he, his brother Antonio Booze, appellant, and several other boys, were riding bicycles in the Fort Totten area when one of appellant's tires went flat. After appellant removed the front wheel of his bicycle, and put the rear wheel and frame in some bushes, the group rode to Princeton and Quebec Streets, with appellant walking. Lonnie testified that when the group saw Marcus, he overheard appellant tell his brother Antonio Booze that appellant was going to take Marcus' bicycle. According to Lonnie, appellant then grabbed Marcus' bicycle and tried to force him off it. Another boy then grabbed Marcus off the bicycle and "put him up against the wall." According to Lonnie, once Marcus was off the bicycle, appellant got on the bicycle and rode away. Also, Lonnie testified that later on the day of the robbery, he saw appellant with Marcus' bicycle.

Antonio Booze, Lonnie's younger brother, testified to essentially the same version of events. Antonio stated that when appellant saw Marcus, he told Antonio that "he was going to take the bike." Further, Antonio stated that he saw appellant grab Marcus' bike, saw another boy grab Marcus and put him against the wall, and saw appellant ride away on the stolen bicycle. Antonio also testified that later on the day of the robbery, he saw appellant with the stolen bicycle.

After trial, the trial judge found "proof beyond a reasonable doubt that [appellant] did commit the offense of robbery by tak-

ing a bicycle from Marcus Saunders." In so doing, the trial judge found it understandable that Marcus was unable to identify the person who took his bicycle:

> The victim impressed the Court as a young person, immature, and not one who would take these events in the ordinary course and be able to make factual reports and observations. He appeared to the Court to be a person who would be frightened and intimidated in a circumstance such as this.

Thus, in finding guilt, the trial judge relied primarily on the testimony of the two eyewitnesses, Lonnie Brown and Antonio Booze. The trial judge also placed reliance, however, on evidence purporting to establish that Marcus had seen appellant with his bicycle later the day it was stolen. In the first of two such references, the trial judge stated, "[o]ne of these young witnesses heard [appellant] say that he was going to take Marcus' bike and, further, Marcus had later observed [appellant] in the possession of the bike." Moments later, the trial judge observed:

> The Court is persuaded that these two eyewitnesses accurately observed [appellant] taking the bike from Marcus and the Court credits and would be able to draw inference from Marcus' observation that [appellant] was in possession of the vehicle shortly after its theft.

As noted above, there was no testimony in the record that Marcus had seen appellant in possession of his bicycle later on the day of the robbery.

On this basis, the trial judge found appellant guilty of robbery, adjudicated him a delinquent, and ordered him placed in restrictive commitment in Oak Hill Children's Center. This appeal followed.

## II

Appellant claims on appeal that the trial court's judgment was "plainly wrong" be-

---

**4.** In addition, it was disclosed at trial that Marcus did not identify appellant in a photographic array shown to him approximately three weeks after the robbery.

cause based on incorrect factual findings. We agree.

We are not to set aside the trial court's judgment, except for errors of law, unless we find that it was plainly wrong or unsupported by the evidence. *See* D.C. Code § 17–305(a) (1981); *In re S.P.*, 465 A.2d 823, 826 (D.C.1983). Under D.C.Code § 17–305(a), our review of the trial court's factual findings is limited: "we must treat them as presumptively correct unless they are clearly erroneous or unsupported by the record." *Auxier v. Kraisel*, 466 A.2d 416, 418 (D.C.1983) (per curiam); *see also Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 546–47 (D.C.1981).

■ In this case, there is no dispute—indeed both sides agree—that the trial judge's findings contain factual statements that are unsupported by the record. In her findings, the trial judge twice stated that the complainant had seen appellant in possession of his bike later on the day of the robbery. While the record did contain testimony that Lonnie Brown and Antonio Booze had seen appellant with complainant's bike later that day, at no time did Marcus so testify. Marcus testified that he could not identify appellant at the time the bicycle was stolen, and never stated that he saw appellant with his bicycle later that day.

Having determined that the trial judge's factual findings were in error, we must now determine if this error was harmless. In assessing harmless error, we seek to ascertain whether we can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error...." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *see also Hairston v. United States*, 500 A.2d 994, 998 (D.C.1985); *Washington v. United States*, 499 A.2d 95, 102 (D.C. 1985).

■ In this case, the trial judge twice incorrectly stated that Marcus had seen appellant in possession of the stolen bicycle later on the day of the robbery. Significantly, in the second of these instances, the trial judge explicitly articulated her reliance on the erroneous finding. Looking at the trial judge's findings, we cannot determine whether the trial judge would have found appellant guilty of robbery absent her incorrect assessment of complainant's testimony. On the face of this record, therefore, we are unable to conclude that the judgment was not "substantially swayed by the error." Thus, we conclude that the error was not harmless.

■ While acknowledging that the trial judge erred in her factual findings, the District asserts that the error was merely an "inadvertent" misstatement of the record not warranting reversal. In essence, the District asserts that because the trial judge explicitly acknowledged that Marcus could not identify the person who stole his bicycle, she could not—as a logical matter—have inferred guilt from a later identification of him with the bicycle.

We reject this reasoning on two grounds. First, the District's argument requires us to speculate on the trial judge's intended meaning in a way that contradicts the plain language of the record. Secondly, we cannot accept the District's assertion that the trial judge's erroneous finding was necessarily an inadvertent misstatement because she also stated that the complainant never was able to identify the person who took his bicycle. While it is true, as the trial judge accurately found, that Marcus did not see who took his bicycle, it is at least possible that he could have recognized his *bicycle* in appellant's possession later in the day and identified the person possessing his bike. There is nothing internally inconsistent in the trial judge's findings, therefore, that requires us to conclude, as a logical matter, that her factual misstatement was "inadvertent."

■ Finally, we note our rejection of appellant's contention that there was insufficient evidence to go to the trier of fact in this case. In assessing an insufficiency

claim, we review the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *See In re S.P., supra,* 465 A.2d at 826; *In re Q.L.J.,* 458 A.2d 30, 32 (D.C.1982) (per curiam); *Blackledge v. United States,* 447 A.2d 46, 49 (D.C.1982). "The government is not required to negate every possible suggestion of innocence, and the evidence need only be such that reasonable persons could find guilt beyond a reasonable doubt." *Id.; see also In re Q.L.J., supra,* 458 A.2d at 32; *Blackledge, supra,* 447 A.2d at 49.

In this case, the testimony of the two eyewitnesses—Lonnie Brown and Antonio Booze—provided ample evidence upon which "reasonable persons could find guilt beyond a reasonable doubt." Our concern in this case, therefore, is not whether there was sufficient evidence to go to the trier of fact. Rather, we reverse because the possibility exists that in finding guilt, the trier of fact was swayed by erroneous factual matter.

*Reversed.*