*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CT-583

JAMES CRAWFORD, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CTF-18758-13)

(Hon. Yvonne Williams, Trial Judge)

(Submitted September 28, 2017              Decided September 6, 2018)

*Rupa Ranga Puttagunta* was on the brief for appellant.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, *Rosalyn C. Groce*, Deputy Solicitor General, and *John D. Martorana*, Assistant Attorney General, were on the brief for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and NEBEKER, *Senior Judge*.

Opinion for the court by *Chief Judge* BLACKBURNE-RIGSBY.

Dissenting opinion by *Senior Judge* NEBEKER, at page 7.

BLACKBURNE-RIGSBY, *Chief Judge*: Appellant Crawford James Jr.[1] appeals his conviction for one count of leaving after colliding with property damage (LAC-PD) in violation of D.C. Code § 50-2201.05c (2013 Supp.).[2] On appeal, appellant alleges that there was insufficient evidence to satisfy the *mens rea* element of the offense, which requires that the appellant "know[] or ha[ve] reason to believe that his . . . vehicle has been in a collision." D.C. Code § 50-2201.05c (a). Because we have no basis for determining whether the trial court's verdict properly incorporated the *mens rea* element, we vacate appellant's conviction and remand the case for the court to reweigh the evidence and to render a new verdict.

**I.**

On October 15, 2013, around 10:25 p.m., appellant was attempting to move his car out of a parallel parking space near the 1700 block of Bay Street, Southeast, Washington, D.C. At this same time, Metropolitan Police Department (MPD) Officers Naples and Barriteau were on the same block responding to a family disturbance call when they heard a "loud crash." Officer Naples turned around and

---

[1] The case caption and record erroneously invert appellant's first and last names. At trial, appellant stated his name as "Crawford James Junior."

[2] Appellant was found not guilty of one count of driving under the influence of alcohol in violation of D.C. Code § 50-2206.11 (2013 Supp.).

observed a burgundy Ford Explorer "up against the vehicle in front of it" and stated that it looked like the Ford Explorer had "collided" with this vehicle. He observed the driver of the Ford Explorer, later identified as appellant, put the vehicle in reverse, move out of the parking space, and start driving away at about ten miles per hour.

The officers chased after the Ford Explorer, which stopped halfway down the block. Officer Naples instructed appellant to exit the vehicle. As appellant exited the vehicle, Officer Naples noticed that appellant's balance was unsteady and his eyes seemed heavy and bloodshot. The officers advised appellant that they believed he had struck a vehicle, and Officer Naples testified that appellant "had no idea what we were talking about[,]" and that "[h]e didn't know that he had collided with a vehicle." Officer Naples also testified that he noticed an alcoholic beverage odor coming from appellant's person, and thus, proceeded to conduct the standard field sobriety tests. Appellant failed the field sobriety tests and was placed under arrest.

At trial, the owner of the Volvo, Robert Southern, testified that he noticed, sometime during the week of October 15, 2013, that someone had hit his car as he observed "a white streak along the back left side rear bumper that had not been

there before." Appellant testified that he did not hit the Volvo. The trial court found appellant guilty of LAC-PD.

## II.

In evaluating the sufficiency of the evidence, "we view the evidence in the light most favorable to the government, giving full play to the right of the [fact-finder] to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Medley v. United States*, 104 A.3d 115, 127 n.16 (D.C. 2014) (internal quotation marks omitted). "Where the evidentiary record is sufficient to support the verdict in a bench trial, but the findings of fact underlying the verdict are insufficient, we therefore have deemed it appropriate to remand for the judge to augment those findings as necessary to clarify whether the verdict can stand." *Warner v. United States*, 124 A.3d 79, 89 (D.C. 2015).

Appellant contends that there was insufficient evidence of the requisite *mens rea* to find him guilty of leaving after colliding with property damage. The statute requires that the person operating the vehicle must "know[] or ha[ve] reason to believe" that their vehicle was in an accident. D.C. Code § 50-2201.05c (a). In

ruling, the trial court expressed doubt about whether appellant knew that his car had been in a collision, stating:

> [T]his happens to me, quite frankly, and maybe, perhaps when [appellant] was pulling out he didn't realize he had hit the car because the damage to the bumper is so slight that what it looks like is, while it's being described as a crash, I mean, it's not the crash in, it can't be a crash in the stereotypical way that we think of a crash . . . . Here, the bumper is fully intact, it just has scratch marks on it, which is consistent with sort of someone pulling out of a parking space and, and sliding by the car in front of it and so that, so you're both, so you're rubbing by the car in front of you, which is technically a collision but, you know, that sort of problem, that probably happens every day in this city given the parking constraints that we are faced with.

Nevertheless, the trial court found appellant guilty of LAC-PD because it believed that lack of knowledge was not a sufficient defense to this crime.[3]

This, however, was an erroneous statement of the law—not being aware of the collision constitutes a proper defense if the operator of the vehicle did not

---

[3] The trial court stated:

> And the notion that you weren't aware of the fact that you hit the car is not necessarily a defense that I'm aware of under the law, that I've been told about. So I find the defendant guilty of leaving after colliding and there's not even been an allegation made that he didn't know he hit the car. The allegation made was that he didn't hit the car, period.

know or have reason to believe that he or she had collided with another vehicle. From the trial court's statements, it is evident that the trial court had some doubt as to whether appellant had actual knowledge of the crash, especially in light of appellant's testimony that he did not hit the car. The trial court, however, made no factual findings as to whether appellant should have known that he had been in an accident, another means to satisfy the *mens rea* element required under D.C. Code § 50-2201.05c (a). "In a bench trial, . . . the trial court will often reveal the precise basis for the decision. We think that if that particular basis is erroneous but other bases not addressed by the trial court would sustain a conviction, the proper course of action is to remand rather than reverse outright." *Foster v. United States*, 699 A.2d 1113, 1116 n.5 (D.C. 1997). "Therefore, 'we are constrained to remand this case for the court to weigh the evidence in the record afresh and render a new verdict.'" *Grayson v. United States*, 953 A.2d 327, 328 (D.C. 2008) (quoting *Shewarega v. Yegzaw*, 947 A.2d 47, 54 (D.C. 2008)).

Accordingly, we vacate appellant's conviction and remand the case to the Superior Court for further proceedings in accordance with our opinion.

*So ordered.*

NEBEKER, *Senior Judge*, dissenting: I respectfully dissent from my colleagues' remand to flesh out an already fleshy post-trial, pre-verdict monologue. Despite no request for a special verdict, the trial judge, none-the-less, delivered a prolonged and rambling monologue in which she discredited the officers' testimony about hearing and seeing a crash. She also went into her personal experiences driving and parking in this city. She then dwelt on Crawford's testimony and concluded that "perhaps" and "maybe" he did not have knowledge or cause to know that he collided with the other parked car. She described the testimony of the owner of that car as a minor "scratch" on his bumper. She then concluded that Crawford was "technically" guilty. Of course, there is no such verdict; there is either guilty beyond a reasonable doubt, or not guilty. *See* Super. Ct. Crim. R. 23 (c).

As Aristotle so opined, "what has happened cannot be made not to have happened. Hence Agathon is right in saying 'This only is denied even to God, the power to make what has been done undone.'" 19 ARISTOTLE, NICOMACHEAN ETHICS, Book VI, § 2 (H. Rackham trans., Harvard University Press 1934). However, this is precisely what my colleagues seek to do in remanding this case, instead of ruling on the record present before us. This is an error because, in modern jargon, once an expression of innocence is conveyed by the trial judge, that

expression is "in the cloud," i.e. it cannot be taken back or unsaid. The trial judge was permitted to render a general verdict, as she was not asked to render a special verdict. A general verdict implicates The Prevailing Party Rule where on appeal we read the record in the light most favorable to that party. *Cherry v. District of Columbia*, 164 A.3d 922, 929 (D.C. 2017). The language used by the trial judge in issuing the verdict is not to be taken lightly, particularly when an expression of a finding in favor of acquittal tips the balance of the evidence. *See Fong Foo v. United States*, 369 U.S. 141, 143 (1962) (upholding "the entry of a final judgment of acquittal" by the trial judge due to "supposed improper conduct on the part of the [prosecutor], and a supposed lack of credibility in the testimony of the witnesses for the prosecution" due to double jeopardy concerns).

Standards of proof operate to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions" for a particular type of case and are "more than [] empty semantic exercise[s]." *Addington v. Texas*, 441 U.S. 418, 423, 424 (1979) (internal quotations omitted). Three types of standards operate on a continuum of certainty in order to "allocate the risk of error between the litigants." *Id.* at 423. For a preponderance of the evidence, the risk of error is "share[d] . . . in roughly equal fashion"; "the clear and convincing standard" shifts the burden to the party with it;

and the burden beyond a reasonable doubt places the risk "almost [] entire[ly]" on the government. *Id.* at 423-24. Criminal cases require "the factfinder to reach a subjective state of near certitude of the guilt of the accused." *Davis v. United States*, 834 A.2d 861, 867 (D.C. 2003) (internal quotations omitted); *In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he reasonable-doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.") (internal quotation omitted). Here, the trial court placed Crawford's state of mind in his favor by stating that "maybe" "perhaps [he] didn't realize he had hit the car" and she further characterized his testimony as being "[un]aware" that he was involved in a collision. Therefore, I construe this record as reflecting the trial judge's doubt as to proof of an essential element of this offense and that doubt is, per force, the equivalent of "not guilty" as a matter of law. I would reverse and remand with directions to enter a judgment of acquittal. But perhaps or maybe the trial judge will construe this remand of the case to be plenary and see fit to acquit Crawford.